# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN CHARLES GAUTHIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-05-268-FHS |
| ) | |
| BILL REYNOLD, WARDEN'S ) | |
| ASSISTANT, HASKELL HIGGINS JR., ) | |
| WARDEN, SCOTT MEACHUM, STATE ) | |
| FINANCE DIRECTOR, RON WARD ) | |
| DIRECTOR D.O.C., JIM RABON, ) | |
| ADMINISTRATOR, D.O.C., DAVID ) | |
| HENEKE, BOARD OF CORRECTIONS ) | |
| DIRECTOR, VIC D. WILLIAMS, ) | |
| CORRECTIONAL OFFICER D.O.C., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the court for its consideration is the Defendants' Second Motion to Dismiss/Motion for Summary Judgment and Brief in Support. The court rules as follows on the motion.

Plaintiff, appearing *pro se*, is an inmate within the custody of the Oklahoma Department of Corrections (DOC). On June 27, 2005, plaintiff filed suit pursuant to 42 U.S.C. Sec. 1983 alleging violations of his First Amendment (Count 1), due process (Count 2), due process (Count 3) and equal protection (Count 4) rights. Plaintiff names and sues seven (7) state employees (six from DOC and 1 from the State Treasurer) in their official capacity and individual capacity. The complaint is very difficult if not impossible to comprehend due to its rambling nature.

As best as can be determined, a brief summary of the allegations of plaintiff are as follows. In count one, plaintiff alleges the defendants Reynolds, Higgins, and Williams violated his rights when they took all "my legal materials", demoted plaintiff and transferred him to Oklahoma State Penitentiary ("OSP"). He claims that Reynolds and Higgins retaliated against him for exercising his right of access to the courts and transferred him to the OSP for ongoing litigation against the state as well as various prison officials. He also alleges Reynolds and Higgins denied him classification to a lower security level and dropped plaintiff from earned credit level (4) to level (1) in retaliation for filing a Civil Rights complaint. Further, plaintiff alleges on January 21, 2005, officials at the Howard McLeod Correctional Center ("HMCC") confiscated all of his legal materials. Among the materials confiscated were numerous inmate's materials as well as one correctional officer's legal work. He further alleges the inmates, as well as himself, were threatened by officials at HMCC with a write up for plaintiff having these inmate's and guard's legal materials. Plaintiff also alleges on February 4, 2005, plaintiff was assaulted by a group of inmates at knife point. Plaintiff claims inmates were put up to the assault by staff and officials at HMCC. He alleges he was told to get a job change because plaintiff was upsetting the vo-tech staff. He further claims he made numerous requests to have all of his legal materials returned, and they were not given back until the day he informed both Higgins and Reynolds that they had been sued by plaintiff. On this same day, plaintiff alleges he was transferred to OSP. Plaintiff claims while there, he was denied access to the law library at OSP. He alleges he was retaliated against for "jailhouse lawyering", even though he did not have an adequate law library. He also claims he was shipped back to HMCC on April 26, 2005, after he complained about the

2

inadequacies of the OSP's law library and his lack of access to the courts.  He claims this put him in actual danger.  Finally, in count one plaintiff alleges he was punished for "Improper Conduct with Staff" without a pre-deprivation hearing and lost 161 credit days.

In his second count, plaintiff alleges defendants Ward and Rabon violated his rights when they decided to arbitrarily deny him classification to lower security. He also alleges he is being retaliated against by never being PPWP eligible and never receiving his earned credits back from a class A or B write-ups. He also alleges Rabon interfered in his incarceration for personal reasons by taking it upon himself to address his classification as well as jail time issues with Vinita officials. Plaintiff further alleges upon his arrival at HMCC he was also denied lower security due to a crime involving a child.  He said the officials at the Oklahoma State Penitentiary disagreed with Rabon's interpretation of OP-060104, II (H) and classified him eligible to go to lower security.  Plaintiff claims he was eligible to work PPWP while he was housed at the yard in Vinita and worked on two different PPWP jobs when sent to HMCC by Northeastern Oklahoma Correctional Center.  He claims he was supposed to be sent to a yard which had extensive law library access, but instead was sent to HMCC for not cooperating with Warden Sutter. He also claims some rules regarding the return of earned credits are being inconsistently applied.

As to count three, plaintiff alleges defendants Meachum and Heneke violated his rights when the Department of Corrections removed from his trust fund account money to pay for court-ordered costs without an adjudication these funds were due.  He claims the Executive Branch including the State Finance Director

3

does not have the power or the authority to implement a policy to deduct court costs from trust fund accounts.  He claims the Department of Corrections has been taking court costs from inmate trust fund accounts for years without paying these costs to the court clerks.

As to count four, plaintiff alleges defendant Ward violated his rights when depleting his trust fund draw account 100% each month.  He claims he is being punished for accessing the courts. He says the Department of Corrections provided him with the needed materials to file pleadings, responses, etc., then deducted those costs from the trust fund account and never deducted them from his mandatory savings account.  Plaintiff claims because of these deductions, he was never able to use his draw account to purchase any items from the prison commissary account.  He also claims he is being denied access to courts because they will not allow him to buy stamps and put them on his privileged mail.  Plaintiff also claims he is being denied the opportunity to purchase things like new underclothes, shoes, television, radio and commissary items like other inmates.

Plaintiff seeks declaratory relief, injunctive relief and money damages including compensatory, actual, punitive, unspecified, discretionary or indeterminate damages.

On December 7, 2005, defendants filed a joint motion to dismiss/motion for summary judgment.  On May 11, 2006, the court granted the motion to dismiss for plaintiff's failure to fully exhaust all his claims.  On appeal, the Tenth Circuit Court of Appeals reversed and remanded the case to the district court because of a recent Supreme Court decision stating not all claims must be exhausted for a prisoner's civil rights action to

proceed.  On June 18, 2007, the defendants filed a second joint motion to dismiss/motion for summary judgment.  Plaintiff failed to respond to this motion.

## **FINDINGS OF FACT**

The court finds the facts as follows.  Plaintiff is sentenced to the custody of the Oklahoma Department of Corrections.  Plaintiff has not filed a grievance addressing his allegations of: (1) defendants Reynolds, Higgins, and Williams violating his rights February 4, 2005, when plaintiff was allegedly assaulted by a group of inmates at knife point while working at the vo-tech.  Plaintiff claims the inmates were put up to the assault by staff and officials at HMCC in retaliation for plaintiff announcing he was going to file a complaint with the "Feds".  Plaintiff claims he was told to get a job change because he was upsetting the vo-tech staff with all his talk about filing a complaint.  (2) Defendant Williams has not been identified in a grievance and plaintiff fails to describe what he did to plaintiff.

Plaintiff's grievance regarding assignment to a PPWP crew was not resolved by the Department of Corrections until July 11, 2005, after the plaintiff filed his complaint.

Plaintiff was transferred to the HMCC from the Northeastern Oklahoma Correctional Center, a minimum security prison, on June 30, 2004, due to the Plaintiff claiming he was threatened at the facility.  Plaintiff was then transferred laterally from the HMCC, another minimum security prison, on February 8, 2005, for security reasons.  The transfer was determined to be necessary by prison staff after it was discovered during a prison search that

the plaintiff had been doing legal work for one of the prison employees. The recommendation was made on January 26, 2005, and was approved by the Population Unit at Lexington, Oklahoma, on February 8, 2005. The Department of Corrections prison management procedures instruct the prison staff to assign inmates transferred for security reasons to Level 1. The staff made the necessary assignment to Level 1 effective the date of transfer. Plaintiff was later assigned to Level 2 on April 1, 2005, to Level 3 on May 1, 2005, and to Level 4 on June 1, 2005. Plaintiff was transferred back to HMCC on April 26, 2005. The prison staff at HMCC have not initiated another transfer recommendation due to the claim of retaliation by the Plaintiff made in his lawsuits. Plaintiff filed a grievance as to his level assignment due to his transfer from HMCC to OSP and was denied relief by the warden and the Director for the reason the assignment was deemed appropriate due to the transfer for security reasons. Plaintiff filed a grievance as to his access to the law library at the OSP and the postage issue. However, he was denied relief by the warden and Director as the plaintiff had access to the law library at the OSP and was in fact appointed to work in the law library. Plaintiff filed a grievance as to his classification and the use of his criminal history of a crime involving a child and was denied relief by the warden and the Director as the use of the criminal history was appropriate. Plaintiff filed a grievance as to the payment of court costs and was denied relief by the warden and the Director as the payments are authorized and appropriate. Plaintiff filed a grievance as to the alleged taking of legal material and was denied relief by the warden and the Director as the material was returned to the plaintiff.

## I.  Failure to Exhaust

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. Sec. 1997e(a).

In Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) the Tenth Circuit Court of Appeals stated:

> An inmate who begins the grievance process but does not complete it is barred from pursuing a 42 U.S.C. Sec. 1983 claim under the Prison Litigation Reform Act for failure to exhaust his administrative remedies. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). In Wright, an inmate alleged that he had substantially complied with the administrative procedures but did not see the process to its conclusion. The court noted that the PLRA does not "enable judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems." Wright at 358.

The express language of 42 U.S.C. Sec. 1997e(a) mandates exhaustion in all suits "brought with respect to prison conditions". In the face of such a clear directive, the court cannot weigh the fairness of the exhaustion requirement or entertain exemptions from its reach. Porter v. Nussle, 534 U.S. 516 (2002)(holding exhaustion required for all prisoner suits, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong.)

A review of the record before the court reveals that while plaintiff did file a variety of grievances, he never filed a grievance as to staff actions related to the alleged assault by

7

inmates and the allegation they were put to the assault by the defendants. Further, plaintiff failed to file a grievance as to any of the allegations against defendant Williams. The court finds plaintiff has failed to make any colorable argument that he has exhausted his administrative remedies as to these claims, and he has cited no authority or facts, other than his own conclusory allegations, to demonstrate he was denied access to those administrative procedures. See <u>Brown v. Zavaras</u>, 63 F.3d 967, 972 (10th Cir. 1995) (conclusory allegations insufficient to state a cause of action). Accordingly, his claims as to staff actions related to the alleged assault by inmates and the allegation they were put to the assault by the defendants and allegations against defendant Williams are hereby dismissed.

## II. Official Capacity

Defendants have been sued in their official capacity. Defendants contend that all actions taken in their official capacity are not actionable. It is well settled that a suit against a person in his or her official capacity is, in fact, a suit against the entity itself, here the State of Oklahoma. In fact, the Department of Corrections is the state and not a person and cannot even be a defendant in a Section 1983 complaint. "Official capacity suits, in contrast [to personal capacity suits], generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985). Thus, the suit against the individual defendants in their official capacity is truly an action against the state. Therefore, defendants are not proper defendants in their official capacity and this action against them in their official capacity is hereby dismissed.

## III. Access to Court

Plaintiff has alleged he was denied access to the law library's free legal materials which in turn prevented him from having access to the court system. He also alleges defendants deprived him of postage. Plaintiff has not alleged any specific harm though by these actions. It is undisputed access to the courts and the means to effectuate such access are fundamental constitutional rights. Bounds v. Smith, 430 U.S. 817, 828 (1977). However, "the constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided." Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citations omitted). The Constitution requires only that reasonable access to the courts be permitted. Johnson v. Avery, 393 U.S. 483, 490 (1969) and Ford v. Schmidt, 577 F.2d 408, 410 (7th Cir. 1978), *cert. denied*, 439 U.S. 870 (1978). In determining whether the access afforded an inmate is reasonable, the test to be applied is whether the access is "adequate, effective, and meaningful." Bounds, 430 U.S. at 822. Here, the court finds the plaintiff did have adequate, effective and meaningful access to legal materials, and the plaintiff's allegations have no substance.

To have standing to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury. Lewis v. Casey, 518 U.S. 343, 350-51 (1996). "To do so, he must show that any denial or delay of access to the court prejudiced him in pursuing litigation." Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996). In the case at bar, plaintiff has not been able to make a showing that he was ever prevented access to the law library. Further, he was not able to establish any actual injury on this claim. Inmates are not entitled to unlimited free

postage and the courts have found that reasonable regulations that require reproduction at a cost or postage at a cost are necessary to balance the rights of the prisoner with the budgetary considerations of the prison system. <u>Johnson v. Parke</u>, 642 F.2d 377, 380 (10th Cir. 1981); <u>Harrell v. Keohane</u>, 621 F.2d 1059, 1061 (10th Cir. 1980) and <u>Twyman v. Crisp</u>, 584 P.2d 352, 359 (10th Cir. 1978). There is no merit to plaintiff's claims. Accordingly, defendants are granted summary judgment on this claim.

### IV. Petitioner has no liberty interest in his situs of incarceration.

In counts one and two plaintiff alleges his rights were violated when he was transfered to different facilities and different cells. It is well settled that there is no constitutional right to incarceration in a particular correctional facility. <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983). There are no state laws or prison regulations creating either a right or an expectation for a prisoner to remain in a particular prison or classification to which he has been assigned. Further, no due process hearing is required in conjunction with a transfer to a different facility. Such transfers are within the discretion of the corrections officials. <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976); <u>Meachum v. Fano</u>, 427 U.S. 215 (1976) and <u>Twyman v. Crisp</u>, 584 F.2d 352, 355-356 (10th Cir. 1978). Therefore, plaintiff's claims in count one and two with regard to his transfers are without merit.

### V. Plaintiff has no right or vested liberty interest in earned credits

To the extent plaintiff is seeking the restoration of earned credits, his claim cannot be brought in a civil rights suit. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 489-90 (1973) and <u>Brown v. Smith</u>, 828 F.2d 1493, 1495 (10th Cir.1987) (holding that a 28 U.S.C. § 2241 habeas petition is the appropriate means by which to seek the restoration of good-time credits).  Further, plaintiff has also raised this issue previously in 05-203 and it was addressed by this court in the disposition of that lawsuit.

## VI.  Payment of Costs While Incarcerated

Plaintiff's claim that the Department of Corrections Director or Chairman of the Board of Corrections do not have the authority to collect from the inmate and pay to the Court Clerks any fines, fees and costs due in accordance with a Judgment and Sentence is frivolous.  "...the legislature has authorized the withdrawal of a portion of an inmates's prison wages to apply towards those [fines and court costs] under Sec. 549" and that the "authorization given to the Department under Sec. 549 is clear and unambiguous.  While incarcerated, the fines earned by a prison inmate...may be withdrawn by the Department to pay the costs." <u>Webb v. Maynard</u>, 907 P.2d 1055, 1057 (Okla. 1996).  The inclusion of the Treasurer of the State of Oklahoma as a Defendant changes nothing as the State Treasurer does not run the Department of Corrections or make the rules for its management and operation.   That responsibility is reserved to the Department of Corrections Director and the Board of Corrections. <u>Webb</u> at 1055; 57 O.S. Sec. 549 and <u>Fields v. Driesel</u>, 941 P.2d 1000, 1004 (Okla. Cr. 1997). Thus, defendants are granted summary judgment on plaintiff's claims in counts three and four regarding payment of fees and costs from his prison fund while he was incarcerated.

## VII. Personal Participation

Respondent Superior cannot be used as basis for liability under 42 U.S.C. Sec. 1983. <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981). To be liable under 42 U.S.C. Sec. 1983 a public official must have personally participated in the deprivation of a constitutionally protected right. <u>Coleman v. Turpen</u>, 697 F.2d 1341, 1346, n.7 (10th Cir. 1982). Personal participation is an essential allegation of a 42 U.S.C. Sec. 1983 claim. Plaintiff has failed to specifically identify what acts defendants Williams and Meacham ever committed that led to his classification action, transfer from HMCC to OSP and then back to HMCC. Nor do the defendants Williams and Meacham have any authority in matters related to the prison management procedures requiring payment of criminal fees and costs based on the Judgment and Sentence. There is no personal participation by these defendants in any of the allegations by plaintiff. Accordingly, defendants Williams and Meacham are granted summary judgment on all of plaintiff's claims since plaintiff failed to establish personal participation of these defendants on his claims.

## VIII. Prison Internal Management Procedures Do Not Confer Any Rights On The Petitioner

Neither the Department of Corrections internal management procedures/memoranda nor those of the private prison, are designed to, and do not, confer any additional rights unto any prisoner than those authorized by a statute or protected by the Constitution. Those procedures are implemented to "aspire to instruct subordinate employees how to exercise discretion vested by the state in the [Director], and to confine the authority of

[department] personnel in order to avoid widely different treatment of similar incidents." <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). Any claim plaintiff has a right to anything such as legal material or transfer of his choice based on Department of Corrections prison management procedures is without merit.  In addition, any claim of a violation of a right due to either failure to follow prison management procedures or misinterpreting a prison management procedure in the classification process is also without merit.  Accordingly, defendants are granted summary judgment on this claim.

Accordingly the defendants' joint second motion to dismiss/motion for summary judgment is hereby **GRANTED**.

**IT IS SO ORDERED** this 8th day of November, 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma